UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

ROCHELLE CONWAY,            )
    Plaintiff,            )
                            )
vs.                         )     1:06-cv-1611-LJM-WTL
                            )
MICHAEL J. ASTRUE,[1]       )
Commissioner of Social Security, )
    Defendant.            )

**ENTRY ON JUDICIAL REVIEW**

    Plaintiff, Rochelle Conway ("Conway"), requests judicial review of the final decision of defendant, Michael J. Astrue, Commissioner of Social Security ("Commissioner"), denying Conway's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Court rules as follows.

**I. BACKGROUND**

    Conway was born in 1945. R. at 41. She was fifty-seven years old at the time of the alleged disability onset date, and sixty-one at the time of Administrative Law Judge Manuel J. Carde's ("ALJ") decision. R. at 21. Conway completed the eleventh grade of school. *Id.* She has worked as a cashier, postal clerk, and mail handler. R. at 218. She had a heart attack in February 2002.

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted, therefore, for Commissioner Jo Anne B. Barnhart as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Conway stopped working on May 4, 2002, following an acute interior myocardial infarction. R at 51, 232.

On August 9, 2002, Conway filed for DIB and SSI pursuant to 42 U.S.C. §§ 423 and 1382. R. at 329-31. Her alleged disabilities include coronary artery disease, high blood pressure, arthritis of the lower back, shoulder impairment, left arm impairment, rash, anxiety disorder, panic attacks, and a possible pulmonary impairment. R. at 21. Conway's initial application was denied by the Social Security Administration ("SSA") on August 28, 2002. R. at 19. She filed a request for reconsideration on November 19, 2002, which was denied by the SSA on June 3, 2003. R. at 190, 323. Conway then filed a request for hearing on August 11, 2003, which was held before the ALJ on July 20, 2005. The ALJ affirmed the SSA's denial on April 22, 2006. R. at 19-28, 187. The Appeals Council subsequently denied Conway's request for review on August 16, 2006. R. at 9-11. On October 6, 2006, the Appeals Council set aside that decision to consider additional information contained in an August 4, 2006, interpretation of a cervical spine MRI. R. at. 5-7, 332. The Appeals Council ultimately concluded that the additional information did not provide a sufficient basis for changing the ALJ's ruling and affirmed its prior decision. R. at 5-7.

Conway reports that her shoulder pain began in March 2001, and that the pain did not result from trauma. On October 5, 2002, Dr. Sunil Ramrakhiami ("Dr. Ramrakhiami") administered a dynamometer test and concluded that Conway's hand grip strength was equal in both hands. R. at 299-300. A state medical agency consultative evaluation dated October 12, 2002, concluded that Conway had no manipulative limitations that could potentially affect her ability to use her left hand to reach, handle or finger objects. R. at 294. She could occasionally lift and/or carry up to twenty pounds of weight and could frequently lift and/or carry up to ten pounds, but was not otherwise

incapable of pushing or pulling. R. at 292. The evaluation did not describe any shoulder pain or shoulder-related restrictions. R. at 291-98.

On March 13, 2003, Dr. Ray L. Henderson ("Dr. Henderson"), noted in a second consultative evaluation that Conway complained of pain in her left arm. R. at 260-62. He ultimately concluded that she had normal grip strength and had "fine" finger manipulative abilities, including the ability to zip, button, and pick up coins. *Id.*

Conway began seeing physical therapist Sherry Hanson ("Hanson") for shoulder pain on June 4, 2003. R. at 77-83. At that time, Conway told Hanson that she had felt pain in her left shoulder since March 2001, and that the pain did not result from trauma. R. at 82. Hawkins and Neer tests of the left shoulder were positive and range of motion ("ROM") was painful. R. at 82, Pl. Br. 3. Conway reported that her shoulder pain increased when she used her left arm to reach and her left hand to hold things. R. at 82. Her pain level ranged from a 5 out of 10 at best and a 9.5 out of 10 at worst. R. at 82. She likened her pain to a mild toothache or headache, and reported that it disrupted her sleep. R. at 82. Conway's therapy goals included the ability to lift items independently and hold things with her left hand; Hanson reported that those goals were only partially achieved. R. at 79.

When Conway was hospitalized for a cardiac episode in February 2004, Dr. Linda Kharmis ("Dr. Kharmis") attributed Conway's shoulder pain to chronic osteoarthritis. R. at 60, 65. A February 23, 2004 X-ray of Conway's left shoulder revealed a minor osteophyte formation on the undersurface of her acromion process that could impinge on her rotator cuff. R. at 49.

In October 2004, Dr. Michael Byers noted that her shoulder symptoms were musculosketal, not ischemic. R. at 179-80.

Conway continued to complain of shoulder pain through June 2005. R. at 49, 167-69, 170-71, 179-80.

Conway testified during the hearing before the ALJ that, among other things, she feels almost constant pain in her left shoulder. R. at 339-340. She testified that her shoulder felt better when it was taped by a physical therapist. R. at 340. When the tape was removed a few days later, her shoulder pain resumed. *Id.* Vocational expert Michael Blankenship and medical expert Paul Boyce each testified that none of Conway's ailments, including her shoulder condition, would preclude her from performing her past relevant work as a cashier. R. at 18-19.

## II. **DISABILITY AND STANDARD OF REVIEW**

To be eligible for DIB and SSI, a claimant must have a disability. 42 U.S.C. §§ 423(a)(1), 1382. "Disability" means the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). In determining whether a claimant is disabled, the ALJ applies the five-step process set forth in 20 C.F.R. § 404.1520(a)(4):

1. If the claimant is employed in substantial gainful activity, the claimant is not disabled.

2. If the claimant does not have a severe medically determinable physical or mental impairment or combination of impairments that meets the duration requirement, the claimant is not disabled.

3. If the claimant has an impairment that meets or is equal to an impairment listed in the appendix to this section and satisfies the duration requirement, the claimant is disabled.

    4.       If the claimant can still perform the claimant's past relevant work given the claimant's residual functional capacity, the claimant is not disabled.

    5.       If the claimant can perform other work given the claimant's residual functional capacity, age, education, and experience, the claimant is not disabled.

The burden of proof is on the claimant for the first four steps, then shifts to the Commissioner at the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A dispositive finding may be made at any step in the sequential evaluation, at which point the evaluation ceases and a decision is issued. *Id.*

The Social Security Act (the "Act"), specifically 42 U.S.C. § 405(g), provides for judicial review of the Commissioner's denial of benefits. When the Appeals Council denies review of the ALJ's findings, the ALJ's findings become the findings of the Commissioner. *See, e.g., Henderson v. Apfel*, 179 F.3D 507, 512 (7th Cir. 1999). This Court will sustain the ALJ's findings if they are supported by substantial evidence. 42 U.S.C. § 405(g); *Nelson v. Apfel*, 131 F.3d 1228, 1234 (7th Cir. 1999). In reviewing the ALJ's findings, the Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the ALJ. *Id.* While a scintilla of evidence is insufficient to support the ALJ's findings, the only evidence required is "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala,* 999 F.2d 635, 643 (7th Cir. 1987). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). Further, "[a]n ALJ may not discuss only that evidence that favors his ultimate conclusion, but must

articulate, at some minimum level, his analysis of the evidence to allow the [Court] to trace the path of his reasoning." *Diaz*, 55 F.3d at 307.  An ALJ's articulation of his analysis "aids [the Court] in [its] review of whether the ALJ's decision was supported by substantial evidence." *Scott v. Heckler*, 768 F.2d 172, 179 (7th Cir. 1985).  Although an ALJ need not discuss every piece of evidence, he must confront significant evidence that conflicts with his decision. *Indoranto v. Barnhart,* 374 F.3d 470, 474 (7th Cir.2004); *Books v. Chater*, 91 F.3d 972, 980 (7th Cir.1996); *Diaz v. Chater*, 55 F.3d 300, 307-08 (7th Cir.1995).

### III.  DISCUSSION

#### A.  THE ALJ'S FINDINGS

At the first step of the disability analysis, the ALJ found that Conway had not engaged in substantial gainful activity since her alleged onset date.  R. at 22.  At the second step, the ALJ found that Conway had a combination of "severe" impairments, but found, at the third step, that those impairments did not individually or in combination meet or medically equal the criteria for any listing contained in the Listing of Impairments at 20 C.F.R. pt. 404, subpt. P, app. 1.  R. at 20.  He also found that Conway's statements regarding her limitations were "not totally credible," and that Conway had the following Residual Functional Capacity ("RFC"):  "[Conway] regained the ability to perform a full range of light work within one [year] of her alleged onset date.  Her abilities to stand, sit, and walk have been intact. She could lift and carry [twenty] pounds occasionally and [ten] pounds frequently."  R. at 26.

Based on that RFC, at the fourth step the ALJ concluded that Conway was able to perform her past relevant work as a cashier. *Id.*  Consequently, the ALJ concluded that Conway was not

6

disabled.  R. at 27.  Conway asserts that the ALJ's decision, and thus the decision of the Commissioner, is not supported by substantial evidence.

## B. CONWAY'S ARGUMENTS

Conway contends that the ALJ committed the following errors:  (1) that the ALJ failed to properly assess Conway's RFC and ability to perform past relevant work, (2) that the ALJ erred when it failed to remand Conway's case in light of new and material evidence, (3) that the ALJ failed to properly assess Conway's credibility under Social Security Ruling ("SSR") 96-7p, (4) that the ALJ failed to properly assess Conway's obesity, and (5) that the ALJ improperly gave controlling weight to the SSA's assessment.

### 1. The ALJ's Assessment of Conway's RFC and Conway's Ability to Perform Past Relevant Work

The ALJ's finding that Conway retains the RFC to perform light exertional work, including relevant past work as a cashier and post-office clerk, with the limitations described above, is supported by substantial evidence.  In making his determination, the ALJ relied on statements and reports from Conway, and others, including all treating and examining physicians and psychologists, regarding Conway's medical history, diagnoses, treatment, and efforts to work.  R. at 22, 24-27.  This approach is consistent with 20 CFR § 404.1529(c)(3) and SSR 96-7p.  After reviewing the evidence offered, the ALJ determined Conway's RFC, which was consistent with the vocational and medical experts' opinion regarding Allen's functioning.  R. at 26.  In addition, under the regulations, state agency medical consultants and other program physicians are "highly qualified physicians . . .

7

who are also experts in Social Security disability evaluation." 20 C.F.R. §404.1527(f)(2). Thus, the opinions of Dr. Blankenship and Dr. Boyce provide substantial evidence in support of the ALJ's decision. The ALJ's RFC determination is entirely consistent with the findings of the various specialists who examined Conway in treatment and consultation.

Conway relies on *Benson v. Massanari*, No. 00 C 2085, 2002 WL 1759825 (N.D. Ill. July 29, 2002), to support her assertion that the ALJ's decision should be remanded for failing to consider and discuss critical medical evidence that rotator cuff and impingement diseases resulted in functional limitations restricting her ability to reach and handle with her left hand. Pl. Br. at 10. In *Benson*, however, the ALJ failed to discuss or confront evidence that conflicted with his decision. *Benson*, 2002 WL 1759825, at *7-8. The ALJ's conclusion that Conway cannot perform heavy or medium work, including heavy lifting, is consistent with the medical evidence addressing Conway's left shoulder and arm pain. Several physicians noted that the pain restricted Conway's ROM and ability to lift and reach, but none described the pain as completely disabling. R. at 26, 77, 79, 82, 260-62, 299-300. There is no evidence that Conway's impairments preclude her from performing cashier duties. Dr. Boyce testified that Conway's shoulder condition would not prevent her from performing cashier duties. R. at 353. While the ALJ provided scant justification for his conclusion in the decision, the Court will not remand on grounds that have no support in the record. *See Id*. ("We have consistently held that a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case." (quoting *Seene v. Apfel*, 198 F.3d 1065, 1067 (8th Cir. 1999))). The Court finds that the record contains "such relevant evidence as a reasonable mind might accept as adequate to support

8

a conclusion." *Perales,* 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)). Therefore, the ALJ's decision is supported by substantial evidence.

Conway asserts that the ALJ's decision should be remanded because it "ignored the entire line of medical evidence" detailing her difficulty in reaching and handling. "Although the ALJ need not discuss every piece of evidence in the record, he must confront the evidence that does not support his conclusion and explain why it was rejected." *Indoranto v. Barnhardt*, 374 F.3d 470, 474 (7th Cir. 2004). However, rather than disregarding this evidence, the ALJ acknowledged it and concluded that Conway could perform cashier duties. To support this conclusion, the ALJ cited to the testimony of Dr. Blankenship. If the ALJ relies on testimony from a vocational expert, the hypothetical question he poses to the vocational expert must incorporate all of the claimant's limitations supported by medical evidence in the record. *See Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir.2004); *Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir.2003); *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir.2002). The ALJ asked Dr. Blankenship, "Do you think that there's any evidence in the record that would preclude the claimant from being capable of [working as a cashier or post office clerk]?" R. at 353. That question incorporates all limitations supported by medical evidence in the record. Dr. Blankenship testified that Conway could perform work as a cashier. *Id.* He also testified that Conway had a shoulder condition that precluded her from performing her past relevant work as a post office clerk. *Id.* Accordingly, the ALJ's finding that Conway's physical impairments are not sufficiently severe to prevent her from performing cashier duties is supported by substantial evidence.

9

**2. The ALJ's Failure to Remand Conway's Case in Light of New and Material Evidence**

Next, Conway asserts that she has had another MRI since the date of the ALJ's decision. As a result of the MRI, Conway states that she has been diagnosed with severe central canal stenosis, possible cord edema, marked facet degeneration, foraminal narrowing, and effaced and deformed spinal cord. Pl. Br. at 12.

The only purpose for which this Court can consider additional evidence submitted after the ALJ's decision, is to determine whether the case should be remanded to the agency pursuant to the sixth sentence of 42 U.S.C. § 405(g). *See Eads v. Sec'y of Dep't of Health & Human Servs.*, 983 F.2d 815, 816-18 (7th Cir. 1993). In order to remand the case, without ruling on the merits, the evidence must be new and material, and there must be good cause for failure to incorporate the additional evidence into the record at the prior hearing. *See* 42 U.S.C. § 405(g) (sentence six). "For sentence six purposes . . . , 'materiality' means that there is a 'reasonable probability' that the Commissioner would have reached a different conclusion had the evidence been considered, and 'new' means evidence 'not in existence or available to the claimant at the time of the administrative proceeding.'" *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997) (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)).

The Commissioner concedes that the MRI and diagnosis are new evidence, and the Court agrees, as it was not discovered until after the administrative law hearing. However, the Commissioner argues that the evidence is not material, and that Conway has not shown good cause for failing to incorporate the evidence into the record at the prior hearing. To be material, there must be a reasonable probability that the ALJ would have reached a different conclusion had the evidence been considered. *Perkins*, 107 F.3d at 1296. This evidence does not establish a basis for changing

10

the ALJ's decision because it relates to a period of time after the ALJ's April 26, 2006, decision, and not to Conway's condition prior to the ALJ's decision. *See Godsey v. Bowen*, 832 F.2d 443, 445 (7th Cir. 1987). Because the additional evidence provides no basis to alter the ALJ's decision, it is not material. *See Sears v. Brown*, 840 F.2d 394, 400 (7th Cir. 1988). Because this Court finds the evidence not to be material, it will not pass on the question of good cause.

While this new evidence does not permit the Court to remand the case back to the ALJ for reconsideration, it does not mean that Conway is not now disabled due to the new diagnosis. *See Godsey*, 832 F.2d at 445. Accordingly, Conway "may be entitled to file a fresh application and obtain benefits from [2006] on—not, as she is seeking in this appeal, for a period beginning [in 2002]." *Id.*

Accordingly, the Court finds that Conway is not entitled to a remand under the sixth sentence of 28 U.S.C. § 405(g).

### 3. The ALJ's Assessment of Conway's Credibility

Conway further argues that the ALJ's denial decision must be reversed because in reaching his credibility determination the ALJ failed to evaluate any of the factors required to be considered by SSR 96-7p. Specifically, Conway argues that the ALJ did not consider:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
>
> 6. Any measure other than treatment the individual receives or has received for relief of pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and;
>
> 7. Other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms[.]

Pl. Br. at 14-15.

Specifically, she insists that the ALJ should have accorded greater weight to her assertions regarding her alleged orthopedic, pulmonary, and skin conditions. Pl. Br. at 15-16. Conway's argument is without merit. The ALJ clearly evaluated Conway's statements under SSR 96-7p. On page four of his decision the ALJ states explicitly that, "[he] considered opinion evidence in accordance with the requirements of . . . [Social Security Ruling] 96-7p." R. at 4. Further, he discusses all of the factors for evaluating subjective complaints of claimants. The ALJ considered Conway's daily activities such as walking, bathing, and washing dishes. R. at 23. He discusses the frequency of her shoulder pain, heart problems, and skin rash outbreaks. R. at 22, 26. He addresses factors that precipitate and aggravate symptoms of those problems, including heavy lifting and exposure to sunlight. R. at 26. These considerations carefully track the requirements of SSR 96-7p.

### 4. The ALJ's Assessment of Conway's Obesity

An ALJ is required to consider both impairments that the claimant says she has in addition to impairments about which the ALJ receives evidence. 20 C.F.R. § 404.1512(a). Although Conway did not claim obesity as a contributing cause of her impairment in her August 2002 disability claim, R. 210-16, or during her ALJ hearing, R. 329-72, the references to Conway's approximately 185

pound weight in her medical records were sufficient to alert the ALJ to Conway's obesity. R. at 90, 123, 245, 286, 299, 303. Although Conway has not provided medical evidence that she suffers from any condition related to her obesity, she contends that remand is required pursuant to *Barrett v. Barnhart*, 355 F.3d 1065, 1068 (7th Cir. 2004). However, in *Barrett*, the claimant provided medical evidence that she suffered from a medical condition that prevented her from losing weight even though she was taking medication. Here, Conway provides no medical evidence that obesity worsened her condition.

Contrary to Conway's assertion that the ALJ failed to consider her obesity, the ALJ evaluated the effect of Conway's weight and other impairments in combination when discussing Dr. Ramrakhiani's October 2002 consultative examination. R. at 23. As the ALJ restated, Conway's "[g]ait and station were normal. [She] could walk on her heels and toes, tandem walk, hop, squat, and rise from a squatted position without difficulties." *Id.* Generally, Dr. Ramrakhiani noted Conway's height and weight, that she had some difficulty walking, but did not otherwise indicate that Conway had difficulties related to obesity. R. 299-300. Moreover, Drs. Henderson and Khamis subsequently examined Conway and also provided no indications that she suffered from a medical condition related to her obesity or that her obesity effected her other impairments. R. at 53-64, 260-621. Accordingly, the ALJ's finding that Conway's obesity did not worsen any other conditions enough to prevent her from performing cashier duties is supported by substantial evidence.

### 5. The ALJ's Assignment of Great Weight to the State Agency's Opinion

Conway also argues that the ALJ erred by assigning greater weight to the state agency's determination that she remains capable of performing light work despite her impairments than that

of her treating physician. R. at 20. She claims that this opinion does not constitute substantial evidence because it is neither comprehensive nor current. *Id.* When a physician's opinion is not assigned controlling weight, 20 C.F.R. § 416.927(d)(2) requires the ALJ to assign the opinion weight according to several factors, including the examining and treatment relationship, supportability, consistency, and the physician's specialization. 20 C.F.R. § 416.927(d)(2)-(6). Pursuant to the regulations, the ALJ stated that the consistency of the state agency's opinion with the objective medical evidence "affords it great probative value." R. at 25. As a result, the consultative state agency physician's opinion was assigned great weight. The Court finds that there is adequate evidence to support the ALJ's decision to assign the state agency physician's opinion great weight.

## IV. CONCLUSION

For the foregoing reasons, plaintiff's, Rochelle Conway, Motion to Remand is **DENIED** and the final decision of defendant, Michael J. Astrue, Commissioner of Social Security, is **AFFIRMED**. Final judgment shall be entered accordingly.

IT IS SO ORDERED this 11th day of March, 2008.

LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Electronically distributed to:

Jame S. Goldstein
jamegoldsteinlaw@aol.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov